## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brandon Barnes, Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

### AGENT BACKGROUND & INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since March 2020. I am a graduate of the FBI Academy in Quantico, Virginia and am currently assigned to the Joint Terrorism Task Force (JTTF) at the FBI Denver Office. My current duties include, but are not limited to, responding to and investigating federal criminal violations occurring on aircraft. I have received training and instruction in the field of investigation of crimes aboard aircraft and have had the opportunity to participate in investigations relating to such crimes, including sexual assault occurring on an aircraft.

2. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that ROBERT EARL GLASPER violated 49 U.S.C. § 46506(1) & 18 U.S.C. § 2244(b) (sexual contact without permission within special aircraft jurisdiction), 49 U.S.C. § 46506(2) (lewd, indecent, obscene acts within special aircraft jurisdiction), and 49 U.S.C. § 46506(1) & 18 U.S.C. § 113(a)(5) (assault).

3. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

### APPLICABLE LAW

4. 49 U.S.C. § 46506(1) states that "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that . . . if committed in the special maritime and territorial jurisdiction of the United States . . . would violate section 113. . . or chapter 109A of title 18, shall be fined under title 18, imprisoned under that section or chapter, or both."

5. 18 U.S.C. § 2244(b), which is a statute in chapter 109A of title 18, states that "[w]hoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both."

6. "Sexual contact" is defined in 18 U.S.C. § 2246(3) as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

7. "Special aircraft jurisdiction of the United States" is defined in 49 U.S.C. § 46501(2) as, among other things, an "aircraft in the United States" that is an "aircraft in flight."

8. 49 U.S.C. § 46506(2) states that "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that . . . if committed in the District of Columbia would

violate section 9 of the Act of July 29, 1892 (D.C. Code § 22-1112), shall be fined under title 18, imprisoned under section 9 of the Act, or both."

9. D.C. Code § 22-1112 is now codified at § 22-1312, and makes it unlawful for "a person, in public, to make an obscene or indecent exposure of his or her genitalia or anus, to engage in masturbation, or to engage in a sexual act . . . . A person who violates any provision of this section shall be guilty of a misdemeanor and, upon conviction, shall be . . . imprisoned for not more than 90 days . . . ."

10. 18 U.S.C. § 113(a)(5), states that "[w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished" for a "simple assault" by imprisonment of not more than 6 months . . . ."

## PROBABLE CAUSE

### Background

11. On October 25, 2021, a Denver Police Department (DPD) Officer ("Officer-1") was contacted regarding a physical disturbance on a domestic airline flight, inbound to Denver, Colorado from Sacramento, California (the "Flight"). The Flight arrived at the Denver International Airport (DIA) at approximately 8:44 PM Mountain Daylight Time (MDT) on October 25, 2021. When Officer-1 arrived at the airplane, the pilot informed him that a sexual assault had occurred on the airplane in which one passenger grabbed another passenger. A flight attendant provided Officer-1 with written statements from the alleged victim (the "Victim") and a witness (the "Witness"). Officer-1 contacted the suspect, later identified by his California driver's license as Robert Earl Glasper III.

12. A second DPD office ("Officer-2") took the written statements from Officer-1 and contacted the Federal Bureau of Investigation (FBI). At approximately 9:05 PM MDT, Officer-2 briefed me Barnes on the incident over the telephone. I subsequently traveled to the airport. While at the airport, I reviewed written statements and interviewed the Witness, Victim, and GLASPER, as described below.

### Victim's Statements

13. On the Flight, the Victim sat in seat 18B, the middle seat. GLASPER sat in seat 18A, next to the window and to the left of the Victim. A female passenger (the "Female Passenger") sat in seat 18C, to the Victim's right.

14. The Victim first noticed GLASPER boarding the airplane and commented that GLASPER appeared to be "under the influence." GLASPER "looked lost" as he would stare out the window and look around at his surroundings. The Victim noticed that GLASPER was wearing a face mask containing a picture of marijuana and the Victim commented to GLASPER that he liked the face mask. GLASPER then commented to the Victim that this was the first time he had flown on an airplane. The Victim assumed GLASPER was nervous.

15. After the airplane doors closed, the Victim attempted to put on his seatbelt, but noticed GLASPER was sitting on it. The Victim said to him "I think you may be sitting on my buckle" and the Victim partially stood up to "hover" over the seat and allow GLASPER to retrieve his own seatbelt. At this point, GLASPER reached out with his hand and grasped the left side of the

Victim's buttocks, giving a squeeze.  The Victim was reluctant to call attention to the incident and instead quickly sat down after grabbing and fastening his seatbelt.  As the airplane taxied, took off, and was ascending to cruising altitude, GLASPER repeatedly put his hand on top of the Victim's left leg, applying slight pressure with his fingers and making a "cupping motion" with his hand.  GLASPER's hand did not move to the Victim's groin area or inner thigh.  During this same time period, GLASPER also repeatedly attempted to hold the Victim's hand.  But because the Victim maintained both of his hands firmly in his lap, GLASPER was only able to put his hand on top of the Victim's hands.  Contacts on the Victim's leg and hands would last from between a few seconds to a couple of minutes in duration.  GLASPER also repeatedly asked the Victim to "jerk him off."  The Victim did not respond and tried to ignore GLASPER.

16. After the flight reached cruising altitude, GLASPER began to repeatedly ask the Victim to switch seats.  The Victim believes this was to be closer to the Female Passenger in seat 18C.  The Victim refused to switch seats with GLASPER, as the Victim wanted to spare the Female Passenger of the discomfort of sitting next to GLASPER.  GLASPER then left his seat to use the lavatory.  At this point, the Victim wrote a text message on his phone and physically showed it to the Female Passenger in seat 18C.  The message read "Ummm this guy is really handsy and a creep."  The Female Passenger nodded in agreement but did not do anything else.

17. GLASPER returned from the lavatory, retrieved his jacket and plastic bag of belongings, and went back towards the rear of the airplane.  He returned shortly thereafter.  GLASPER then attempted to hold the Victim's hand and touch his leg again.  At this point, the Victim noticed that GLASPER appeared to have an erection.  GLASPER began masturbating and exposed his penis to the Victim saying to the Victim "look at this."  The Victim turned away and did not see the ejaculation, but saw GLASPER wiping his hands in the area between seats 18A and 18B.  Shortly after this incident, the Female Passenger in 18C and a woman named sitting across the aisle—the Witness—contacted a flight attendant and the Victim was moved away from GLASPER and closer to the front of the airplane.  The Victim sat in the new seat and cried.

18. The Victim did not verbally communicate with GLASPER after asking GLASPER about his seatbelt.  The Victim did not encourage GLASPER's behavior.  At some points, the Victim physically turned his back toward GLASPER and moved as far as he could away from him.  But the Victim also did not want to infringe on the personal space of the Female Passenger in seat 18C.  The Victim also played games on his cellular telephone in an attempt to ignore GLASPER.

### The Witness's Statements

19. The Witness was seated in 18D, across the aisle from GLASPER and the Victim.  When GLASPER boarded the airplane, the Witness noticed that he appeared anxious, distraught, and fidgety.  GLASPER did not appear to be able to sit still.  GLASPER repeatedly opened and closed his window shade and was frequently looking around at people and his surroundings in an odd way.  GLASPER was seated at a window seat and the Victim was seated next to him.

20. As the flight progressed, the GLASPER noticed that the Victim appeared uncomfortable.  At one point, the Victim showed the woman passenger next to him a text message saying, "I'm getting creeper vibes." The Witness was able to see the Victim's cellular phone displaying the message from across the aisle.  The Victim turned his back to the subject.  The Witness noticed that GLASPER touched the Victim's hand.  The Victim appeared paralyzed and deeply uncomfortable.

21. At one point, GLASPER attempted to use the lavatory, but was unable to due to a food cart blocking the aisle.  After returning to his seat, GLASPER exposed his penis and began to masturbate.  After finishing his masturbation, GLASPER wiped his hands on the seat.  After masturbating, GLASPER grabbed his personal belongings and went to the lavatory.  Later, the Witness heard from a flight attendant and two woman that GLASPER had attempted to sit between the two women while going to or from the lavatory.  While Glasper was gone, the Witness asked the Victim "Are you ok?"  He responded, "I don't think so."  When GLASPER returned, the Witness contacted the flight attendant, who found new seats for the Victim and the Witness.

22. The Female Passenger sitting on the other side of the Victim was asleep for most of the previously described events.

## GLASPER'S Statements

23. GLASPER did not provide a written statement to DPD after the incident.  When he arrived at the airplane, Officer-1 verbally advised GLASPER of his *Miranda* Rights and told GLASPER he was accused of sexual assault, whereupon GLASPER responded that he did not know what Officer-1 was talking about.  GLASPER stated that the incident was consensual and that he did not want to talk anymore.

24. I also attempted to interview GLASPER with another DPD officer present for the interview.  I verbally provided GLASPER with *Miranda* Rights.  GLASPER did not appear to initially understand, but eventually responded in the affirmative when asked if he understood.  GLASPER repeatedly stared for long periods of time at me without responding to questions.  When GLASPER did speak, his words were difficult to understand.  GLASPER said he was from Oakland, California.  He was traveling to visit his grandfather in or near Dallas, Texas.  GLASPER could not remember his grandfather's telephone number and was unable to log into his cellular telephone to retrieve the number.

25. GLASPER said he was lying down next to the window on the airplane. GLASPER said that the "other person" (which I understood to mean the Victim) was grabbing GLASPER's leg and holding GLASPER's hand. This "other person" was smiling and laughing. He was playing a game on his cellular telephone and talking.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

<u>s/ Brandon Barnes</u><br>
Special Agent Brandon Barnes<br>
Federal Bureau of Investigation

Sworn to before me by reliable electronic means this <u>26th</u> day of October, 2021

Hon. N. Reid Neureiter
United States Magistrate Judge
District of Colorado

Affidavit reviewed and submitted by Andrea Surratt, Assistant United States Attorney.